**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FILED

JUN 2 1 2024

UNITED STATES DISTRICT JUDGE
STEVEN C. SEEGER

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 23 CR 305 |
| v. | |
| KEVIN CRUZ | Judge Steven C. Seeger |

## PLEA AGREEMENT

1.      This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant KEVIN CRUZ, and his attorneys, ROBERT J. KERR and GAL PISSETZKY, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.      The indictment in this case charges defendant with cyberstalking, in violation of Title 18, United States Code, Section 2261A(2).

3.      Defendant has read the charge against him contained in the indictment, and that charge has been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the indictment, which charges defendant with cyberstalking, in violation of Title 18, United States Code, Section 2261A(2).

### Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charge contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning on or about August 12, 2021, and continuing until on or about May 16, 2023, at Oak Park, Villa Park, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant KEVIN CRUZ, with the intent to harass Victim-1, used an interactive computer service, electronic communication service, and electronic communication system of interstate commerce, and other facilities of interstate and foreign commerce, to engage in a course of conduct that placed Victim-1 in reasonable fear of serious bodily injury, and caused, attempted to cause, and would reasonably be expected to cause, substantial emotional distress to Victim-1, and CRUZ did so in violation of a temporary stalking no contact order issued by the Circuit Court of Cook County, Illinois, under case number 2022OP40018, on or about July 13, 2022, in violation of Title 18, United States Code, Section 2261A(2).

Specifically, on or about August 12, 2021, CRUZ and Victim-1 met over Grindr, an electronic communication service, and communicated over the platform for the purpose of seeking a potential intimate relationship. During that interaction, Victim-1 sent CRUZ nude photographs of Victim-1. Between on or about August 2021 and December 2021, Victim-1 and CRUZ met in person on several occasions. CRUZ expressed an interest in pursuing a romantic relationship with Victim-1, and

2

ultimately, Victim-1 informed CRUZ that Victim-1 was not interested in pursuing a potential intimate relationship with CRUZ. CRUZ was upset that his romantic gestures were rebuffed.

Starting in or around December 2021 up until mid-2023, CRUZ created numerous profiles on dating websites or applications in which CRUZ impersonated Victim-1. Those websites included Grindr and Sniffies, which were electronic communication services. Some of those profiles included photographs of Victim-1, the nude photographs that Victim-1 provided, variations on Victim-1's true name, and Victim-1's home address. CRUZ, pretending to be Victim-1, communicated with numerous men to arrange sexual encounters. During some of those conversations, CRUZ arranged for the men to travel to Victim-1's residence for sexual encounters. In some circumstances, CRUZ instructed the men to enter Victim-1's residence, and CRUZ, pretending to be Victim-1, told the men that should Victim-1 resist, the resistance would be part of role-playing, and that the men should attempt to continue to have sex with Victim-1. CRUZ acknowledges that as a result of CRUZ's impersonating profiles, numerous men arrived at Victim-1's residence seeking sex or sexual favors.

Between March 2022 and November 2022, CRUZ also sent nude photographs of Victim-1 or other pornographic materials to members of Victim-1's family, including Victim-1's mother, brother and cousins. For instance, in March 2022, CRUZ sent nude photographs of Victim-1 to Victim-1's mother. In April 2022, CRUZ

3

sent text messages using his cellular phone (but using a spoofed telephone number) to Victim-1's mother identifying the sender as "KC." In those text messages, CRUZ sent a screen shot of an individual performing oral sex with a message stating in sum and substance that the image depicted commercial pornography produced by Victim-1, although the image did not in fact depict Victim-1. Additionally, in April 2022, CRUZ sent text messages using spoofed telephone numbers, but from CRUZ's cellular phone, to Victim-1's mother falsely suggesting that Victim-1 had committed suicide.

On July 13, 2022, the Circuit Court of Cook County, Illinois, issued a temporary stalking no contact order under case number 2022OP40018, which prohibited CRUZ from, among other things, "stalking" Victim-1, having contact with Victim-1, from coming within 1,000 feet of Victim-1's residence, and publishing, sharing, disseminating, or distributing any photographs of Victim-1 by any means. The order was active until July 10, 2024. Between July 13, 2022, and his arrest on May 16, 2023, CRUZ violated the stalking no contact order as described herein.

In May 2023, Victim-1 conducted a meeting in Villa Park, Illinois, with CRUZ that, unbeknownst to CRUZ, was at the direction of the Federal Bureau of Investigation ("FBI"). In the weeks after the meeting, CRUZ sent hundreds of text messages from his cellular phone (but using spoofed telephone numbers) to Victim-1's cellular phone. Additionally, CRUZ ordered flowers, food items, and other goods from retailers to be delivered to Victim-1's residence. On or about May 14, 2023, CRUZ sent a text message to Victim-1 reading, "I did drive by your house earlier

[Victim-1] to check in the gifts and arrangements. Saw you grab the edible arrangements. You were in backyard. [Victim-1] I want to fix this tell me how." On May 16, 2023, CRUZ traveled to a gym where Victim-1 was located, walked toward Victim-1's vehicle, and placed a note on the windshield.

CRUZ acknowledges that his conduct caused Victim-1 to be placed in reasonable fear of serious bodily injury and caused Victim-1 substantial emotional distress.

### Maximum Statutory Penalties

7.      Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.      A maximum sentence of 5 years' imprisonment, and a statutory mandatory minimum sentence of 1 year imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.      Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.      Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8.     Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the 2023 Guidelines Manual.

b.     **Offense Level Calculations**.

        i.        The base offense level is 18, pursuant to Guideline § 2A6.2.

        ii.       Pursuant to Guideline § 2A6.2(b)(1)(A) and (E), the offense level is increased by four levels because the offense involved the violation of a protective order, and involved a pattern of activity involving stalking and harassing the same victim.

        iii.      If the Court determines at the time of sentencing that defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level will be appropriate. The government reserves the right to take whatever position it deems appropriate at the time of sentencing with respect to whether defendant has accepted responsibility within the meaning of Guideline § 3E1.1(a). It is the position of defendant that defendant has accepted responsibility within the meaning of Guideline § 3E1.1(a).

        iv.      If the Court determines that defendant has fully accepted responsibility within the meaning of Guideline § 3E1.1(a), and that the offense level is 16 or higher prior to the application of any reduction for acceptance of responsibility pursuant to § 3E1.1(a), the government will move for an additional one-level reduction in the offense level pursuant to Guideline § 3E1.1(b) because defendant has

timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

      c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

      d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, it is the position of the government that the anticipated offense level is 22 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 41 to 51 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. It is the position of defendant that the anticipated offense level is 19 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 30 to 37 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 1 year imprisonment.

      e.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding

predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.     Each party is free to recommend whatever sentence it deems appropriate.

9

12.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.    Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution to any victim, including Victim-1, in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

14.    Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.    Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code,

Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

17.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 23 CR 305.

18.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

19.     Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

11

        i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

        iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.

Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.     **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

20.     Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

13

**Presentence Investigation Report/Post-Sentence Supervision**

21.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

22.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

23.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office

14

of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

24. Defendant agrees to participate in psychological counseling and sex offender treatment as directed by the Probation Office as a condition of any sentence of probation or supervised release imposed.

### Other Terms

25. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

26. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

27. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

15

28.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

30.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

16

31.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: ___6/21/24___

_Morris Pasqual_ by SME
_____
Scott M. Edenfield on behalf of
MORRIS PASQUAL
Acting United States Attorney

_____
JONATHAN L. SHIH
Assistant U.S. Attorney

_____
KEVIN CRUZ
Defendant

_____
ROBERT J. KERR
GAL PISSETZKY
Attorneys for Defendant

17